<u>DECLARATION OF BRENT W. RENISON</u>

I, Brent W. Renison, make the following declaration based on my personal knowledge and declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. My name is Brent W. Renison. I am a graduate of the William S. Richardson School of Law at the University of Hawaii and am an attorney in good standing in the State of Oregon (OSB No. 964752), and the State of Hawaii (HSB No. 7397). I am admitted to practice before the U.S. Supreme Court, the U.S. Courts of Appeal for the Third, Sixth, Seventh, Ninth, and Eleventh Circuits, the U.S. District Courts for the Districts of Oregon, Hawaii, Colorado, Northern District of Illinois, Western District of Texas, and District of Columbia. I am also admitted to the U.S. Court of Claims. I maintain a principal office for the practice of law in Portland, Oregon.

2. I am known nationally in the field of immigration law and have received national and regional awards, been invited to speak on extraordinary ability petitions and immigration litigation continuing legal education seminars nationally and regionally and have been granted enhanced rates under EAJA by the U.S. Ninth Circuit Court of Appeals. I have practiced exclusively in the field of immigration law since 1997.

3. I am listed in Best Lawyers in America and Chambers and Partners as a leading lawyer in immigration law. I am the recipient of the 2007 Gerald H. Robinson Excellence in Advocacy Award, the 2007 President's Commendation from the American Immigration Lawyers Association for Outstanding Achievement in

1

Exhibit B

Mentoring and Litigation on Behalf of Immigrant Rights, the 2010 Daniel Levy Ninth Annual Memorial Award for Outstanding Achievement in Immigration Law, and the 2011 Oregon State Bar President's Public Service Award. I served as Adjunct Associate Professor of Immigration Law at the University of Oregon School of Law between 2004 and 2007 where I taught the immigration law course. I have been an invited reviewer of *Kurzban's Immigration Law Sourcebook* for many years.

4. In the case of *Freeman v. Mukasey*, 2008 WL 1960838 (9th Cir. 2008), the Ninth Circuit Court of Appeals granted EAJA fees to my client Carla Freeman for my services at an enhanced rate of $250 per hour for time entries between 2004 and 2006 (between 14 and 16 years ago). The Court ruled that I possessed distinctive knowledge and specialized skill needed for that litigation, which involved "the interplay between the adjustment of status regime and the visa waiver program." The Court quoted a number of experienced immigration counsel, including Daniel M. Kowalski, Esq., editor of *Bender's Immigration Bulletin*, that Mr. Kowalski "is personally familiar with the reputation of…Renison, including his capacity for, and expertise in, handling complex immigration applications, petitions and litigation." *Id.* at *5.

5. The Ninth Circuit granted Ms. Freeman the amount of $36,675 for my legal fees, and $54,933.20 in total for District Court and Court of Appeals work on *Freeman v. Gonzales*, 444 F.3d 1031 (9th Cir. 2006). *Freeman v. Mukasey*, 2008 WL 1960838, *7-8 (9th Cir. 2008).

6. I am a member of the American Immigration Lawyers Association's ("AILA") Administrative Litigation Task Force, comprised of a select group of national litigation experts within the membership of AILA. The ALTF has been endeavoring to provide resources to immigration lawyers to enable them to pursue claims in federal court, through templates, practice advisories, CLEs, mentoring, and outreach. Immigration lawyers largely practice in an administrative area with no experience in litigation.

7. The vast majority of immigration lawyers have never, and will never, be involved in federal litigation. In my opinion this is due to the fact that the practice of immigration law requires knowledge of a great volume of confusing, contradictory, complex and bizarre rules, regulations, statutes, memoranda, manuals, and opaque subregulatory arcane agency practices where a simple misstep can lead to disaster for an individual and their entire family. Spending the time necessary to learn one's way around the maze of immigration law and also be familiar and competent in federal court practices and procedures is not manageable for all but a select number of immigration attorneys who take the time and initiative to invest in this area of practice. The number of immigration lawyers on a national level with competent levels of knowledge about the nooks and crannies of immigration law who also have the competence to litigate in federal court is few.

8. In some cases challenging agency action in court, it can be possible to pair a reasonably competent immigration lawyer with no litigation experience with a reasonably competent litigator, but this would duplicate the time required on the case and likely result in the same cost or perhaps more, than an attorney skilled at both. When I mentor others, I am often called upon to walk immigration lawyers

with little experience in federal court through rather routine federal litigation practices and procedures. Additionally, I frequently encounter federal litigators at the offices of the U.S. attorneys around the country who have little to no knowledge or competency in U.S. immigration law. For this reason, there is an Office of Immigration Litigation ("OIL") within the U.S. Department of Justice's Civil Division, which not only litigates some cases for the U.S. Attorneys' offices but also provides substantive immigration law support for those government litigators. This is a resource, of course, only for government attorneys. Lawyers in private practice either need to be skilled in both areas, or enlist the assistance of another lawyer with skill in the area they lack.

9. It is notable that instead of being represented by the Civil Division within the office of the U.S. Attorney for the District of Oregon (who are necessarily generalists), the agency was represented by the Office of Immigration Litigation in Washington, D.C. Defendant agency was therefore able to draw upon the immigration expertise of OIL attorneys for this litigation. This fact tends to show that immigration expertise and litigation expertise were necessary to bring all the issues before the Court for consideration.

10. Other factors that lead to the absence of qualified immigration lawyers who are competent in federal litigation practice and procedure include the fact that immigration filings are typically done on a flat rate basis, subject to national level market rates, and in order to maintain a feasible practice immigration lawyers must take hundreds of cases at a time which may take years or decades to resolve. For immigration lawyers with this kind of caseload it is a heavy lift to

take on a federal litigation case which might take a great deal of time away from a busy caseload. Taking on federal litigation involves risking dropping any one of the hundreds of balls in the air within the immigration law practice. Fueling this is also the fact that most immigrants simply cannot afford to fund a litigation effort to overturn an agency denial.

11. In recent years, I have witnessed USCIS utilize a tactic on a widespread scale which has threatened to chill judicial challenges to their decisions. Specifically, once a lawsuit has been filed challenging an agency denial, USCIS will almost always reopen the denial and issue a Notice of Intent to Deny or another Request for Evidence. The reopening and NOID or RFE issuance has the effect of putting at issue the "final agency action" required under the APA (although courts have in rare occasions found this action unavailing, it usually works to defendants' advantage). This requires the plaintiff to incur non-compensable attorney time at the administrative level dealing with the usually vigorous NOID or RFE, since attorney hours spent on agency work cannot be compensated under EAJA. This is precisely the technique used in the instant case wherein the agency reopened its original denial decision and issued a NOID which required response to agency action again.

12. This "reopen and RFE" strategy is chilling, could be considered bad faith, and keeps lawyers from being able to take agency denial cases to federal court based on the sheer economics of it. This factors into plaintiffs being able to find an attorney who is willing to take a federal immigration litigation case at the EAJA statutory rate. No one is willing to do this song and dance with USCIS for the

EAJA statutory rate.

13. My usual hourly rate is $535 per hour. For several years now I regularly turn away several (between 2 to 5 typically) potential clients per week because my caseload is too high to take any more cases. I would not take on a federal litigation case for less than my usual hourly rate of $535 per hour unless I was volunteering my time for a pro bono case. I am currently engaged in a pro bono litigation effort in federal court in Oregon (*Nakka v. USCIS*) and cannot take additional pro bono work on at this time. I believe my rate of $535 per hour is reasonable and is within market norms for my distinctive knowledge and skills, and reputation locally and nationally.

14. Attached to this declaration is a detailed accounting of time spent on this matter, and I declare that the time records represent time expended on the litigation and are true and correct.

Executed December 9, 2020 at Sisters, Oregon.

_____
Brent W. Renison



**Billing Statement**
Client: Ludovic Pierre BERARDO
Matter: Berardo v. USCIS lawsuit

| Date | Timekeeper | Description | Hrs. | Amount |
|---|---|---|---|---|
| 09/30/2019 | BWR | Review and analyze USCIS denial received by mail (0.4); draft correspondence to client regarding claims for relief under the APA in federal court (0.3). | 0.7 | $374.50 |
| 11/04/2019 | BWR | Review extensive administrative record for relevant facts for complaint (1.5); begin draft of complaint under the APA (4.0) | 5.5 | $2,942.50 |
| 11/05/2019 | BWR | Continue draft of complaint (4.5); review and mark relevant sections of administrative record evidence from file for inclusion (0.8); research (0.9) | 6.2 | $3,317.00 |
| 11/07/2019 | BWR | Finalize complaint (4.1); prepare summons and cover sheet (0.4); file with U.S. District Court (0.2) | 4.7 | $2,514.50 |
| 11/08/2019 | BWR | Review Discovery and Pretrial Scheduling Order issued by Judge Beckerman (0.1); review summons issued (0.1); prepare service copies and direct preparation of certified mail envelopes by administrative staff (0.2) | 0.4 | $214.00 |
| 11/20/2019 | BWR | Review and confirm return receipts | 0.1 | $53.50 |
| 12/03/2019 | BWR | Prepare and file summons returned executed forms with court | 0.3 | $160.50 |
| 12/18/2019 | BWR | Review status update from USCIS regarding reopening of denial; draft email to client | 0.1 | $53.50 |
| 01/02/2020 | BWR | Review and analyze notice reopening denial and Notice of Intent to Deny (NOID) (0.3); draft email correspondence to client outlining litigation issues and strategy (0.2) | 0.5 | $267.50 |
| 01/07/2020 | BWR | Email correspondence with client (0.1); complete and file consent to jurisdiction by Magistrate Judge (0.1) | 0.2 | $107.00 |
| 01/09/2020 | BWR | Review notice of appearance filed by Elizabeth Kurlan on behalf of Defendants | 0.1 | $53.50 |
| 01/10/2020 | BWR | Review voicemail left by Ms. Kurlan (0.1); review email and stipulation prepared by Ms. Kurlan (0.1); confer with client; draft response to email (0.1) | 0.3 | $160.50 |
| 01/14/2020 | BWR | Review order from Court granting stipulation | 0.1 | $53.50 |
| 01/20/2020 | BWR | Email correspondence with Ms. Kurlan; review voicemail from Ms. Kurlan | 0.1 | $53.50 |
| 03/10/2020 | BWR | Email correspondence with opposing counsel Ms. Kurlan | 0.1 | $53.50 |
| 03/23/2020 | BWR | Email correspondence with opposing counsel | 0.1 | $53.50 |
| 03/24/2020 | BWR | Email correspondence with Ms. Kurlan, opposing counsel | 0.1 | $53.50 |
| 04/03/2020 | BWR | Review new agency denial (0.3); analyze issues (0.1); | 0.7 | $374.50 |

| Date | Atty | Description | Hours | Amount |
|---|---|---|---|---|
| | | email correspondence with client regarding strategy (0.1); draft email to Ms. Kurlan with suggested briefing schedule (0.1); email correspondence with Ms. Kurlan (0.1) | | |
| 04/06/2020 | BWR | Email correspondence with Ms. Kurlan (0.1); telephone conference with Ms. Kurlan, opposing counsel (0.3); draft joint status report and proposed briefing schedule (0.5); confirm with Ms. Kurlan (0.1); file joint status report (0.2); email with Ms. Kurlan (0.1); prepare and file joint ADR report (0.2) | 1.5 | $802.50 |
| 04/07/2020 | BWR | Review and analyze second agency denial and extensive administrative record (2.0); prepare litigation notes (0.3); begin draft of first amended complaint (0.7) | 3.0 | $1,605.00 |
| 04/08/2020 | BWR | Draft first amended complaint (continued) (3.2); legal research and analysis (1.6) | 4.8 | $2,568.00 |
| 04/09/2020 | BWR | Analyze cases (1.0); review administrative record (1.2); continue draft of complaint and finalize and file first amended complaint (3.4) | 5.6 | $2.996.00 |
| 05/01/2020 | BWR | Review Order adopting parties proposed briefing schedule; calendar dates | 0.1 | $53.50 |
| 05/14/2020 | BWR | Begin draft of Motion for Summary Judgment | 3.5 | $1,872.50 |
| 05/15/2020 | BWR | Review Defendants' answer to complaint (0.5); prepare notes (0.4); review voicemail from Ms. Kurlan (0.1); telephone conference with Ms. Kurlan regarding changes to briefing schedule (0.2) | 1.2 | $642.00 |
| 05/18/2020 | BWR | Review proposed stipulation changing deadlines (0.1); email correspondence with Ms. Kurlan (0.1); review and approve stipulation (0.1) | 0.3 | $160.50 |
| 05/19/2020 | BWR | Draft Motion for Summary Judgment (6.5); research (0.7); analyze cases (0.3); review and notate evidence (0.3) | 7.8 | $4,173.00 |
| 05/20/2020 | BWR | Continue Draft of Motion for Summary Judgment (4.2); review file for administrative record and evidence (0.8) | 5.0 | $2,675.00 |
| 05/21/2020 | BWR | Draft Motion for Summary Judgment | 3.2 | $1,712.00 |
| 05/22/2020 | BWR | Review status of stipulation (0.1); email to courtroom deputy (0.1); finalize and file Motion for Summary Judgment (1.5) | 1.7 | $909.50 |
| 05/26/2020 | BWR | Review email from courtroom deputy regarding stipulation; respond to email | 0.1 | $53.50 |
| 05/27/2020 | BWR | Email correspondence with Ms. Kurlan regarding Certified Administrative Record (0.1); review Order adopting stipulation (0.1) | 0.2 | $107.00 |
| 06/05/2020 | BWR | Review email correspondence from Ms. Kurlan (0.1); review copy of Certified Administrative Record (0.3) | 0.4 | $214.00 |
| 06/08/2020 | BWR | Draft Amended Motion for Summary Judgment with references to the Certified Administrative Record and | 2.5 | $1,337.50 |

**PARRILLI | RENISON**
**ENTRYLAW.com**

| | | | | |
|---|---|---|---|---|
| | | file with the Court | | |
| 06/22/2020 | BWR | Review and respond to email from Mr. Aaron Goldsmith, new counsel for Defendants regarding CAR | 0.1 | $53.50 |
| 06/29/2020 | BWR | Email correspondence with Mr. Goldsmith, opposing counsel, regarding various scheduling and consent to magistrate jurisdiction | 0.2 | $107.00 |
| 06/30/2020 | BWR | Email correspondence with Mr. Goldsmith regarding scheduling and magistrate jurisdiction (additional discussion) | 0.2 | $107.00 |
| 07/01/2020 | BWR | Review various court notices and filings | 0.1 | $53.50 |
| 07/02/2020 | BWR | Review email correspondence between Mr. Goldsmith and the courtroom deputy | 0.1 | $53.50 |
| 07/13/2020 | BWR | Review and analyze Defendants' Cross Motion for Summary Judgment | 0.5 | $267.50 |
| 07/13/2020 | BWR | Review Amended Cross Motion for Summary Judgment (adds table of contents and table of cases) | 0.2 | $107.00 |
| 07/14/2020 | BWR | Begin draft of Response in Opposition | 0.6 | $321.00 |
| 07/15/2020 | BWR | Review evidence in CAR and prepare notes (0.5); draft Response in Opposition to Defendants' Amended Motion for Summary Judgment (6.8) | 7.3 | $3,905.50 |
| 07/16/2020 | BWR | Finalize and file Response in Opposition | 1.4 | $749.00 |
| 08/12/2020 | BWR | Review and analyze Defendants' Reply | 0.8 | $428.00 |
| 10/20/2020 | BWR | Review and analyze Court's Order and Opinion | 0.5 | $267.50 |
| 10/20/2020 | BWR | Email correspondence with opposing counsel regarding redactions (0.1); draft email to Court regarding redactions (0.1) | 0.2 | $107.00 |
| 11/19/2020 | BWR | Prepare Motion for Fees and Costs | 3.0 | $1,605 |
| 11/20/2020 | BWR | Email correspondence with Mr. Goldsmith regarding motion for fees | 0.1 | 53.50 |
| 12/04/2020 | BWR | Email correspondence with Mr. Goldsmith re: fees | 0.1 | 53.50 |
| 12/09/2020 | BWR | Review email from Mr. Goldsmith re: fees and discuss settlement with client; respond to Mr. Goldsmith (0.1); Finalize Motion for Fees and Costs (1.5) | 1.6 | 856.00 |

| | |
|---|---|
| Total Attorney Hours | 78.2 |
| BWR Hourly Rate | $535 |
| Total Attorneys Fees | $41,837 |

**Costs**
District Court Filing fee: $400

| | |
|---|---|
| Total Costs: | $400 |
| **Total Fees and Costs:** | **$42,237** |