IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LUDOVIC PIERRE BERARDO,

Plaintiff,

v.

UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES; and LOREN
K. MILLER, Director, USCIS Nebraska
Service Center,

Defendants.

Case No. 3:19-cv-01796-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

Plaintiff Ludovic Berardo ("Berardo") filed an application under the Equal Access to

Justice Act ("EAJA"), 28 U.S.C. § 2412(d), for attorney's fees in the amount of $44,672.50 and

costs in the amount of $400, for a total award of $45,072.50.[1] (ECF No. 36.) Defendants United

---

[1] Berardo originally sought attorney's fees and costs in the amount of $42,237. (Pl.'s App. at 4-5.) He then amended his original request to eliminate $642 in fees for clerical tasks to which Defendants objected, and he included an additional $3,477.50 in fees incurred to file his reply brief. (Pl.'s Reply at 6-7; Suppl. Decl. of Brent Renison ("Renison Suppl. Decl.")); *see also Gonzalez v. City of Maywood*, 729 F.3d 1196, 1210 (9th Cir. 2013) (noting that it is "well established that time spent in preparing fee applications" is compensable) (quotation marks and citations omitted).

States Citizenship and Immigration Services ("USCIS") and USCIS Nebraska Service Center

Director Loren K. Miller ("Miller") (together, "Defendants"), object to Berardo's fee application.

(ECF No. 37.) For the reasons that follow, the Court grants Berardo's application and awards

Berardo attorney's fees and costs in the amount of $45,072.50.

## BACKGROUND

Berardo is a citizen and national of Belgium. (ECF No. 26-2 at 184.)[2] He is employed by

the LAIKA animation studio in Hillsboro, Oregon as a stop-motion animator. (*Id.*) LAIKA is an

animation studio that produces award-winning stop-motion animated feature films. (ECF No. 26-

1 at 285-322; ECF No. 26-2 at 1-5.) Berardo has worked as a stop-motion animator on LAIKA's

films, including *ParaNorman*, *Kubo and the Two Strings*, *The Boxtrolls,* and *Missing Link.* (ECF

No. 26-1 at 110; ECF No. 26-2 at 107-08.)

On April 4, 2019, Berardo filed an I-140 visa petition seeking classification under section

203(b)(1)(A) of the Immigration and Nationality Act ("INA") as an alien of extraordinary ability.

(ECF No. 26-1 at 271-79.) In support of his petition, Berardo submitted over two hundred pages

of evidence documenting his work as a stop-motion animator on award-winning and nominated

films and claiming eligibility under six of the ten criteria set forth in 8 C.F.R. § 204.5(h)(3).

On July 11, 2019, Defendants issued a Request for Evidence ("RFE"). (ECF No. 26-2 at

194-99.) The RFE highlighted deficiencies as to the evidence Berardo submitted and stated that

he had not satisfied any of the six requirements. (*Id.*) On August 23, 2019, Berardo responded

with additional evidence and legal argument. (ECF No. 26-2 at 200-06.) Two months later,

USCIS denied Berardo's petition, concluding that Berardo failed to satisfy any of the ten criteria

---

[2] USCIS filed the Certified Administrative Record under seal (ECF No. 26), with exhibits docketed in three parts.

set forth at 8 C.F.R. § 204.5(h)(3). On November 7, 2019, Berardo filed this case challenging USCIS's decision under the Administrative Procedure Act ("APA"). (ECF No. 1.)

After Berardo filed suit, USCIS *sua sponte* reopened Berardo's petition and vacated its original decision. (ECF No. 26-1 at 55.) On December 20, 2019, USCIS sent Berardo a Notice of Intent to Deny ("NOID"). (ECF No. 26-1 at 35.) Although Berardo had not submitted any additional evidence following USCIS's original conclusion that he had not satisfied any of the ten criteria, USCIS concluded in the NOID that Berardo satisfied four of the six claimed criteria, but that he had not demonstrated that he had risen to the very top of his field or had sustained national or international acclaim. (ECF No. 26-1 at 35-44.) In response to the NOID, Berardo submitted additional evidence to satisfy the additional two criteria and to prove his extraordinary ability. (ECF No. 26-1 at 57-249.) On April 3, 2020, USCIS issued a second denial of Berardo's petition. (ECF No. 26-1 at 1-17.)

Berardo sought judicial review of the second denial. (ECF No. 13.) On October 20, 2020, this Court issued an opinion finding USCIS's decision was arbitrary and capricious, and remanding the case to USCIS for further administrative proceedings. (ECF No. 35.) On November 3, 2020, USCIS reopened Berardo's petition and approved it. (Pl.'s Mot. at 1.) On December 9, 2020, Berardo filed this motion for attorney's fees and costs pursuant to the EAJA. (ECF No. 36.)

## DISCUSSION

## I.    LEGAL STANDARDS

"The EAJA provides for the award of attorney's fees to a party that prevails against the United States in a proceeding for review of an agency action, unless the court finds 'that the position of the United States was substantially justified or that special circumstances make an award unjust.'" *Costa v. Comm'r Soc. Sec. Admin.*, 690 F.3d 1132, 1135 (9th Cir. 2012) (quoting

28 U.S.C. § 2412(d)(1)(A)). Eligibility for an award of attorney's fees and costs under the EAJA

requires: "(1) that the claimant be a 'prevailing party'; (2) that the Government's position was

not 'substantially justified'; (3) that no 'special circumstances make an award unjust'; and, (4)

pursuant to 28 U.S.C. § 2412(d)(1)(B), that any fee application be submitted to the court within

30 days of final judgment in the action and be supported by an itemized statement." *Ibrahim v.*

*U.S. Dep't of Homeland Sec.*, 912 F.3d 1147, 1167 (9th Cir. 2019) (quoting *Comm'r, I.N.S. v.*

*Jean*, 496 U.S. 154, 158 (1990)).

"Although the EAJA creates a presumption that fees will be awarded to a prevailing

party, Congress did not intend fee shifting to be mandatory." *League of Wilderness Defs./Blue*

*Mountains Biodiversity Project v. U.S. Forest. Serv.*, No. 3:10-cv-01397-SI, 2014 WL 3546858,

at *1 (D. Or. July 15, 2014) (citing *Flores v. Shalala*, 49 F.3d 562, 567 (9th Cir. 1995)). "The

decision to deny EAJA attorney's fees is within the discretion of the court." *Id.* (citing *Lewis v.*

*Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002)).

## II.    ANALYSIS

Defendants argue that the Court should deny Berardo's fee application because the

government's position was substantially justified, Berardo has not demonstrated that this case

involved a "special factor" to justify enhanced EAJA fees, and the requested fees are excessive.

For the reasons that follow, the Court grants Berardo's fee application.

### A.    Substantial Justification

Defendants argue that the Court should not award EAJA fees to Berardo because

Defendants' position, with respect to both the original agency action and this lawsuit, was

substantially justified. (Defs.' Opp'n at 6-7.) The Court disagrees.

"'The government bears the burden of demonstrating substantial justification.'"

*Thangaraja v. Gonzales*, 428 F.3d 870, 874 (9th Cir. 2005) (quoting *Gonzales v. Free Speech*

*Coal.*, 408 F.3d 613, 618 (9th Cir. 2005)). "To establish substantial justification, the government need not establish that it was correct or 'justified to a high degree'—indeed, since the movant is established as a prevailing party it could never do so—but only that its position is one that 'a reasonable person could think it correct, that is, [that the position] has a reasonable basis in law and fact.'" *Ibrahim*, 912 F.3d at 1167 (quoting *Pierce v. Underwood*, 487 U.S. 552, 565, 566 n.2 (1988)); *see also Al-Harbi v. I.N.S.*, 284 F.3d 1080, 1084 (9th Cir. 2002) ("'Substantial justification' in this context means 'justification to a degree that could satisfy a reasonable person.'") (quoting *Pierce*, 487 U.S. at 565). "When evaluating the government's 'position' under the EAJA, [courts] consider both the government's litigation position and the 'action or failure to act by the agency upon which the civil action is based.'" *Ibrahim*, 912 F.3d at 1168 (quoting 28 U.S.C. § 2412(d)(1)(B)).[3] Thus, "the substantial justification test is comprised of two inquiries, one directed toward the government agency's conduct, and the other toward the government's attorneys' conduct during litigation." *Ibrahim*, 912 F.3d at 1168 (citing *Gutierrez v. Barnhart*, 274 F.3d 1255, 1259 (9th Cir. 2001)).

A government agency's failure to prevail in its position on the underlying issues is not dispositive of whether the government's position was "substantially justified." *See, e.g., Pierce*,

---

[3] Within the immigration context, the Ninth Circuit has expressly held that, pursuant to the EAJA, courts are required to consider the reasonableness of the underlying agency action at issue in the litigation. *See Thangaraja*, 428 F.3d at 873 ("Pursuant to EAJA, the BIA and IJ decisions we review are as much the 'position of the United States' as is the DHS's litigation position."); *see also Singh v. Gonzales*, 502 F.3d 1128, 1129 (9th Cir. 2007) (rejecting the respondent's argument that "only litigation positions of the Department of Homeland Security ("DHS") before this Court, and not decisions of Immigration Judges ("IJs") and the Bureau of Immigration Appeals ("BIA"), are pertinent with regard to whether the government's position was substantially justified"); *Al-Harbi*, 284 F.3d at 1084 ("In making a determination of substantial justification, the court must consider the reasonableness of both the underlying government action at issue and the position asserted by the government in defending the validity of the action in court.").

487 U.S. at 569 ("Conceivably, the Government could take a position that is not substantially justified, yet win; even more likely, it could take a position that is substantially justified, yet lose."). However, a court's finding that an agency decision was unsupported by substantial evidence is "a strong indication" that the position of the United States in the litigation was not substantially justified. *See Thangaraja*, 428 F.3d at 874 ("Our holding that the agency's decision of Thangaraja's case was unsupported by substantial evidence is therefore a strong indication that the 'position of the United States' in this matter was not substantially justified."). "Indeed, it will be only a 'decidedly unusual case in which there is substantial justification under the EAJA even though the agency's decision was reversed as lacking in reasonable, substantial and probative evidence in the record.'" *Id.* (quoting *Al-Harbi*, 284 F.3d at 1085).

In this case, the underlying agency action was not substantially justified. In its initial denial of Berardo's I-140 petition, USCIS determined that Berardo had satisfied none of the six claimed criteria. (ECF No. 26-2 at 194-99.) It was only after Berardo filed the instant lawsuit that USCIS *sua sponte* reopened its denial, and, despite Berardo having not submitted any additional evidence, USCIS issued a new NOID concluding that Berardo satisfied four of the six criteria but that he had failed to demonstrate that he had risen to the very top of his field or had sustained national or international acclaim. (ECF No. 26-1 at 35-44.) Thus, the agency's position as to the first denial was unreasonable, as demonstrated by the agency's own redetermination of its decision based on the same evidence. It should not require the filing of a lawsuit for USCIS to conduct a serious review of I-140 petitions.[4]

_____

[4] In recent years, it has apparently become a common practice by USCIS to *sua sponte* reopen its initial denial of a petitioner's application after the plaintiff files a federal action challenging the agency's decision. *See, e.g.*, *Whitewater Distrib., Inc. v. Cuccinelli*, No. 3:20-cv-970-K-BN, 2020 WL 6120470, at *1 (N.D. Tex. Sept. 29, 2020) (USCIS reopened the plaintiff's I-140 petition and issued an NOID two months after the plaintiff sought judicial review under the

USCIS's second denial also lacked substantial justification. This Court concluded that USCIS misapplied the law with respect to the high salary criterion, abused its discretion by "disregarding important facts demonstrating Berardo's critical role at LAIKA and by failing adequately to explain why these facts were insufficient to satisfy the [leading and critical role] criterion," and that its evaluation of the totality of the evidence was arbitrary and capricious. *Berardo v. U.S. Citizenship & Immigr. Servs.*, No. 3:19-cv-01796-SB, 2020 WL 6161459, at *8- 12 (D. Or. Oct. 20, 2020). The Court noted that "[f]rom the initial denial to the final denial, the outcome of Berardo's petition appears to have been preordained, and the final denial does not reflect a serious evaluation of Berardo's evidence of extraordinary ability in the field of stop-motion animation." *Id.* at *12. Thus, this case does not fall within the "decidedly unusual" category of cases "in which there is substantial justification under the EAJA even though the agency's decision was reversed as lacking in reasonable, substantial and probative evidence in the record," warranting the denial of EAJA fees. *Thangaraja*, 428 F.3d at 874 (quotation marks and citation omitted).

Because the Court has found that the government was not substantially justified in its original agency action, the Court need not determine whether the government was substantially justified in its litigation position. *See Meier v. Colvin*, 727 F.3d 867, 872 (9th Cir. 2013) ("Because the government's underlying position was not substantially justified, we need not address whether the government's litigation position was justified.") Accordingly, Berardo is entitled to an EAJA fee award.

---

APA); *Ahlijah v. Nielsen*, No. PX-17-1710, 2018 WL 3363875, at *2 (D. Md. July 10, 2018) (USCIS reopened the plaintiff's case and issued an RFE a month and a half after the plaintiff filed his complaint alleging an APA violation in federal court); *Shihuan Cheng v. Baran*, CV 17-2001-RSWL-KSX, 2017 WL 3326451, at *1 (C.D. Cal. Aug. 3, 2017) (USCIS issued an RFE two months after the plaintiff filed suit in federal court).

**B.    Fee Calculation**

**1.    Enhanced Hourly Rate**

The EAJA permits fee awards "based upon prevailing market rates for the kind and quality of the services furnished." 28 U.S.C. § 2412(d)(1)(D)(2)(A). Rates are usually capped at $125 per hour, "unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." *Id.* The cost of living adjustments for work performed in 2019 and 2020, respectively, is $205.25 per hour and $207.78 per hour.[5] Courts award enhanced hourly rates where the attorney possesses (1) "distinctive knowledge" and (2) "specialized skill" that was (3) "needful to the litigation in question" and "not available elsewhere at the statutory rate." *Nadarajah v. Holder*, 569 F.3d 906, 912 (9th Cir. 2009).

Berardo requests that the Court approve the usual billing rate of his attorney, Brent Renison ("Renison"), of $525 per hour. (*See* Decl. of Brent Renison ("Renison Decl.") ¶ 13.) Defendants object, arguing that the proposed hourly rate is excessive, and that attorney time should be compensable at the EAJA statutory rate ($125), adjusted only for the cost of living ($205.25 for 2019, and $207.78 for 2020). (Defs.' Opp'n at 10.) The Court finds that an enhanced billing rate is appropriate here.

Berardo demonstrates, and Defendants do not dispute, that Renison has distinctive knowledge and specialized skill in immigration law and litigation. (*See* Renison Decl. ¶¶ 4-7; Decl. of Dagmar Butte ("Butte Decl.") ¶ 9; Decl. of Jennifer Morrissey ("Morrissey Decl.") ¶¶ 4,

---

[5] A copy of EAJA's statutory maximum rates and cost of living adjustments from 2010 to 2020 ("EAJA's Rates and Cost of Living Adjustments") is available at https://www.ca9.uscourts.gov/content/view.php?pk_id=0000000039 (last visited on Jan. 22, 2021).

7; Decl. of Turid Owren ("Owren Decl.") ¶ 4; Decl. of Phillip Smith ("Smith Decl.") ¶¶ 6, 8.)

Nor do Defendants dispute that Renison's specialized skills were not available elsewhere at the

statutory rate. (*See* Butte Decl. ¶ 11; Morrissey Decl. ¶ 5; Owren Decl. ¶¶ 5-8; Smith Decl. ¶ 11.)

Rather, Defendants argue that distinctive knowledge and skills were not needed in this litigation.

(Defs.' Opp'n at 7-8.) Berardo responds that this litigation required counsel with distinctive

knowledge and experience in immigration law and federal litigation, particularly the subspecialty

of employment-based immigration law and the niche area of extraordinary ability petitions. (Pl.'s

Mot. at 2-3; Pl.'s Reply at 3-6.)

The Ninth Circuit has found that "a specialty in immigration law could be a special factor

warranting an enhancement of the statutory rate." *Rueda-Menicucci v. I.N.S.*, 132 F.3d 493, 496

(9th Cir. 1992) (citing *Pirus v. Bowen*, 869 F.2d 536, 542 (9th Cir. 1989)). In addition, the

Circuit has described immigration law as a "labyrinth almost as impenetrable as the Internal

Revenue Code." *Escobar-Grijalva v. I.N.S.*, 206 F.3d 1331, 1335 (9th Cir. 2000). Courts have

awarded enhanced attorney's fees based on specialized knowledge of immigration law in cases

which "involved more than established principles of law with which the majority of attorneys are

familiar." *Nadarajah*, 569 F.3d at 914 (noting that enhanced rates may be warranted where

counsel has established that "knowledge of . . . particular, esoteric nooks and crannies of

immigration law . . . [was] needed to give the alien a fair shot at prevailing" (quoting

*Thangaraja*, 428 F.3d at 876 (citation omitted)). The Ninth Circuit, however, has declined to

"award[ ] enhanced hourly rates in immigration cases pursuant to the statutory exception for

limited availability of qualified attorneys where the litigation in question required no 'distinctive

knowledge' or 'specialized skill.'" *Id.* (declining to award a special factor enhancement for an

appeal involving applications for asylum and withholding of removal); *see Ramon-Sepulveda v.*

*I.N.S.*, 863 F.2d 1458, 1463 (9th Cir. 1998) ("Ramon-Sepulveda's legal claim against the INS involves established principles of res judicata—principles with which the majority of attorneys are, or should be, familiar."); *Rueda-Menicucci*, 132 F.3d at 496 (holding that no specialized skill or distinctive knowledge was necessary to represent the plaintiff at asylum and deportation hearings); *see also Johnson v. Gonzales*, 416 F.3d 205, 213 (3d Cir. 2005) ("Although Johnson's counsel is an experienced attorney who specializes in immigration, he was here faced with a case of straightforward application of the substantial evidence and asylum standards.").

The Court finds that Berardo has presented sufficient evidence to establish that Renison's distinctive knowledge and specialized skill was necessary to achieve success in this case. This case did not involve merely a "straightforward application" of the rules of immigration law. *Thangaraja*, 428 F.3d at 876 (quoting *Johnson*, 416 F.3d at 213). Counsel here was required to be "well-versed in various complicated provisions of immigration law and the ways in which those provisions interacted with one another." *Sedighi v. Holder*, No. 07-CV-1881-BR, 2009 WL 1974508, at *6 (D. Or. July 2, 2009) (awarding enhanced EAJA fees). Specialized expertise and knowledge of sub-regulatory guidance in the area of employment-based immigration was also necessary. Such guidance is contained in internal USCIS memoranda and various versions of USCIS policy manuals, the contents of which impact the interpretation of statutes and regulations governing EB-1 petitions. Berardo has demonstrated that "knowledge of . . . particular esoteric nooks and crannies of immigration law . . . [was] needed to give the alien a fair shot at prevailing." *Thangaraja*, 428 F.3d at 876 (quoting *Muhur v. Ashcroft*, 382 F.3d 653, 656 (7th Cir. 2004)).

In addition, Berardo submitted four expert declarations attesting to the fact that Renison's distinctive and specialized skill was necessary here. Two immigration specialists describe this

case as presenting complex issues that required a highly experienced immigration attorney. For example, Dagmar Butte, an immigration specialist for twenty-eight years and adjunct professor of international law at Lewis & Clark Law School, declared that knowledge of the shifting adjudicatory trends and often contradictory case law involving EB-1 cases is necessary when challenging an EB-1 denial in federal court:

> Distinctive knowledge and skills in immigration law and the subspecialities of business immigration law and extraordinary ability petitions is necessary when challenging an EB-1 denial. EB-1 cases are some of the most complex to prepare because they involve many, many moving parts and require an understanding of how each item of evidence ultimate [sic] drives the case to the goal of establishing the applicant is among the very top in his field. When such a case is denied, the lawyer representing the applicant must not only master the complexities of the underlying application but must also understand the adjudicatory trends—many of which are not reflected in the statute and regulations but are a matter of agency practice. These trends are often contrary to statute and regulations but only someone who has a grasp of how the trends and the law interconnect will be able to make this determination and effectively present it to a Federal Judge. In addition, the limited applicable case law that is precedential is contradictory and complex and requires someone with a deep understanding of the law to harmonize the case law in a way that complies with the law and make sense in light of the facts of each case. This is not something that can be done by someone who does not have distinctive knowledge and skills in relation to EB-1 petitions.

(Butte Decl. ¶ 10.) Similarly, Phillip Smith, a partner at a Portland immigration firm with over twenty years of experience, asserts that Renison's distinctive knowledge and skills in the area of extraordinary ability visas was necessary to achieve the result attained in Berardo's case:

> Very few attorneys have the specialized experience and skill necessary to highlight the erroneous application of the statutes, regulations, rules and memoranda to the facts of these evidence intensive cases. It was absolutely necessary for the success in this case for Mr. Berardo to have an experienced immigration practitioner who was well versed in the employment based first preference extraordinary ability category and who also could adequately present the APA claim through federal court filings. This is particularly true of this case, because the agency did not back down after the initial denial was reopened and a NOID issued. . . . [I]t is there in the summary judgment battle that Mr. Renison's distinctive knowledge and experience came to bear.

(Smith Decl. ¶¶ 9-10.) In contrast, Defendants offer no evidence to support their argument that Renison's skill level was not necessary here. *See Castillo v. Nielsen*, No. 5:18-cv-01317-ODW (KESx), 2020 WL 2840065, at *6 (C.D. Cal. June 1, 2020) ("Plaintiffs cite extensive evidence establishing the specialized expertise of [the plaintiff's legal counsel]; moreover, Defendants fail to rebut this evidence." (citing *Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973, 980 (9th Cir. 2008) ("The party opposing the fee application has a burden of rebuttal that requires submission of evidence . . . challenging the accuracy and reasonableness of the . . . facts asserted by the prevailing party in its submitted affidavits."))).

For these reasons, the Court finds that an enhanced rate is justified in light of the expertise necessary to litigate this case.[6] *See Fatty v. Nielsen*, No. CC17-1535 MJP, 2019 WL 1979321, at *3 (W.D. Wash. May 3, 2019) (holding that the plaintiff's counsel's specialized knowledge and skills were necessary where "[t]wo immigration specialists describe this case as presenting novel issues that required a highly experienced immigration attorney"); *see also Primero Garcia v. Barr*, No. 20-cv-01389-NC, 2020 WL 5366567, at *3 (N.D. Cal. Sept. 8, 2020) (finding that enhanced rates were justified where the plaintiff's counsel possessed "extensive experience litigating immigration cases" and noting that "prior experiences in similar litigation also justify enhanced rates"); *Xiaosi Hu v. Munita*, No. 2:19-cv-01302-RAJ, 2020 WL 2199473, at *2 (W.D. Wash. May 6, 2020) (awarding an enhanced rate where specialized skill and knowledge was required for a case involving adjudication on the merits of the plaintiff's naturalization application).

---

[6] It is noteworthy that the Office of Immigration Litigation ("OIL") in Washington, D.C. represented Defendants, as opposed to the U.S. Attorney for the District of Oregon. Defendants were able to draw upon the immigration expertise of OIL attorneys, which further supports the Court's conclusion that distinctive knowledge and specialized skill in the field of immigration law was necessary to litigate this case.

Having found that a rate enhancement is appropriate, the Court must also determine whether the requested rate is reasonable. *See id.* ("Although the Court concludes that enhanced fees are appropriate, Plaintiff still must show that the requested enhanced rates are 'in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" (quoting *Nadarajah*, 569 F.3d at 916)). The Court looks to the prevailing market rate to determine a reasonable hourly rate. *See Gonzalez*, 729 F.3d at 1205 (noting that the "'prevailing market rates in the relevant community' set the reasonable hourly rates" (quoting *Dang v. Cross*, 422 F.3d 800, 813 (9th Cir. 2005)).

"'Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits.'" *Id.* (quoting *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010)). "Within this geographic community, the district court should consider the experience, skill, and reputation of the attorneys or paralegals involved." *League of Wilderness Defs.*, 2014 WL 3546858, at *13. Courts may also consider factors such as "the quality of an attorney's performance, the results obtained, the novelty and complexity of a case, and the special skill and experience of counsel." *Id.* at *6 (citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553-54 (2010)).

To determine a reasonable hourly rate, "[a]ffidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). Courts in this district rely on the most recent Oregon State Bar Economic Survey ("OSB Survey") as the "initial benchmark." *See U.S. Dist. Ct., Dist. of Or., Message from the Court Regarding Fee Petitions*, https://ord.uscourts.gov/index.php/rules-orders-and-

PAGE 13 – OPINION AND ORDER

notices/notices/fee-petitions (last visited on Jan. 22, 2021); *see also League of Wilderness Defs. v. Turner*, 305 F. Supp. 3d 1156, 1165 (D. Or. Mar. 30, 2018) (relying on OSB Survey data to calculate an attorney's hourly rate under the EAJA). The OSB Survey contains data on attorney billing rates based on type of practice, geographic area of practice, and years of practice.[7] "If the rate requested exceeds the average rate reported in the OSB Survey, the burden is on the prevailing party to justify that higher rate. Even when such justification is present, the court usually limits the hourly rate to the 75th percentile of the OSB Survey." *Turner*, 305 F. Supp. 3d at 1169 (citation omitted).

Defendants argue that Renison's requested hourly rate is too high and does not reflect the prevailing market rate. The Court disagrees. Renison has been practicing law for twenty-three years, specializing in immigration law, employment-based visas, and federal litigation. (*See* Renison Decl. ¶ 2; Butte Decl. ¶ 12; Smith Decl. ¶ 13; Morrissey Decl. ¶ 4; Owren Decl. ¶ 7.) Based on the most recent 2017 OSB Survey, the 2016 mean hourly billing rate for attorneys in Portland, Oregon possessing between twenty-one and thirty years of experience was $394, the 75th percentile was $475, and the 95th percentile was $525. (*See* 2017 OSB Survey at 39.) The EAJA statutory rate has increased by seven percent since 2016,[8] and adjusting the OSB survey rates by the same amount results in a current mean rate of $422, a 75th percentile of $508, and a 95th percentile of $562. Based on these calculations, Renison's requested rate falls between the 75th and 95th percentiles. Renison submitted four expert affidavits attesting that the requested

---

[7] A copy of the 2017 OSB Survey is available at https://www.osbar.org/_docs/resources/Econsurveys/17EconomicSurvey.pdf (last visited on Jan. 22, 2021) ("2017 OSB Survey").

[8] *See* EAJA's Rates and Cost of Living Adjustments, https://www.ca9.uscourts.gov/content/view.php?pk_id=0000000039 (last visited on Jan. 22, 2021).

hourly rates are reasonable and well within market rates considering Renison's knowledge, skills, and extensive experience. (*See* Butte Decl. ¶ 13; Owren Decl. ¶ 8; Smith Decl. ¶¶ 13-14; Morrissey Decl. ¶ 7.) Considering the expert affidavits, Renison's years of experience, and his highly specialized skill demonstrated here, the Court finds that the requested hourly rate is reasonable. *Cf. Xiaosi Hu*, 2020 WL 2199473, at *2 ("Given the prevailing market rates for specialized and highly experienced immigration attorneys specializing in complex litigation, the Court determines that an hourly rate of $650" is appropriate for an experienced Seattle immigration attorney).

### 2. Number of Hours Billed

In litigating fee applications, the plaintiff bears the burden of "documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked," and the government, in opposing a fee application, "has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." *Gates v. Deukmejian*, 987 F.2d 1392, 1397-98 (9th Cir. 1992) (citing *Blum v. Stenson*, 465 U.S. 886, 892 n.5 (1984)).

Defendants argue that the attorney's fees sought by Berardo are excessive because (1) the "case involved, primarily, the briefing of a single issue" and (2) Mr. Renison's timesheets include 1.2 hours of clerical tasks, which are not compensable under the EAJA. (Defs.' Opp'n at 11.) Defendants ask the Court to apply a five percent across-the-board reduction. (*Id.* at 12.)

The Court finds that Berardo has met his burden of rebuttal by submitting time sheets and billing records (Renison Decl. at 7), counsel's declaration (Renison Decl.), and declarations by four experts opining that the requested hours were necessary and reasonable. (*See* Butte Decl. ¶ 13; Owren Decl. ¶ 8; Smith Decl. ¶¶ 13-14; Morrissey Decl. ¶ 7.) Defendants submit no evidence

in support of their opposition. With regard to the entries for arguably clerical tasks, Berardo

withdrew his request for compensation for those entries. (*See* Pl.'s Reply at 6-7.) Given that

Berardo reduced his request by the 1.2 hours in clerical tasks, this Court finds that any further

reduction of fees and costs is unnecessary here. Accordingly, the Court accepts Berardo's

calculation.

### C.    Costs

Berardo seeks $400 in costs for his district court filing fee. Defendants do not object.

Accordingly, the Court awards Berardo his costs in the amount of $400. *See Rashid v. Dep't of

Homeland Sec.*, No. 2:14-2109-JAM-KJN, 2017 WL 4959430, at *7 (E.D. Cal. Nov. 1, 2017)

("Court filing fees in the amount of $400 are reasonable and properly awarded under the

EAJA.") (citation omitted); *see also Freeman v. Mukasey*, No. 04-35797, 2008 WL 1960838, at

*7 (9th Cir. 2008) (granting the plaintiff's unopposed request for filing fees and other costs).

## CONCLUSION

For the reasons stated, the Court GRANTS Berardo's application for attorney's fees and

costs (ECF No. 36), and AWARDS Berardo $44,672.50 in attorney's fees, and $400 in costs, for

a total award of $45,072.50.

DATED this 22nd day of January, 2021.

*Stacie F. Beckerman*

_____

HON. STACIE F. BECKERMAN
United States Magistrate Judge